## STATE v HAHN

Ohio Common Pleas, Hamilton Co

Decided Oct 22, 1937

Dudley M. Outcalt, Prosecuting Attorney, Cincinnati, Simon Leis, Cincinnati, Carson Hoy, Cincinnati, Frank M. Gusweiler, Cincinnati, and Loyal Martin, Assistant Prosecuting Attorneys, Cincinnati, for the State.

Bolsinger & Hoodin, Cincinnati, for defendant.

### OPINION

By BELI, J.

The question presented for determination is whether or not the state should be permitted to offer evidence of other alleged criminal acts of the defendant, which acts, in and of themselves, constitute offenses against the law. It is argued by the state that this evidence should be admitted, and with equal insistence it is argued by the defendant that it should be excluded.

Sec 13444-19, GC, reads as follows:

"In any criminal case where the defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act. is material, any like acts or other acts of the defendant which may tend to show his motive, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant."

The defendant contends that this section is unconstitutional and void.

Courts in other jurisdictions in Ohio

have directly held this statute to be constitutional and the Supreme Court has at least inferentially, held it constitutional. The question here, under consideration however is not dependent upon the constitutionality of this provision. This court is of the opinion that this sec █tion merely writes into the statutory law what long has been the law of this state under the adjudicated cases.

Counsel for both sides have cited many cases arising in England and in other states in this country, in addition to the Ohio cases. It must be borne in mind that each decision is to be construed in the light of the particular facts of the case, as presented. Time forbids any extensive review of these cases. While the opinions of courts of last resort other than Ohio are persuasive, each opinion must be construed in connection with the statutes of those states; but in my opinion it is only necessary to consider the law as established in this state.

Before considering the Ohio cases, it might be well to notice briefly the decision of the Court of Appeals of New York in the case of People v Molineux, 168 N. Y. 264, that being one of the leading authorities in the United States.

Molineux was indicted for the crime of murder in the first degree, it being charged that he administered poison to one Katherine J. Adams. The poison had been sent to a man by the name of Cornish on December 24, 1898, contained in a bottle in a silver holder, the bottle being labeled "Bromo Seltzer." Enclosed in the package was a small envelope of a kind in general use for enclosing cards sent with gifts. Cornish believed that some one had sent him a Christmas gift and placed it in his desk. On the following morning, Cornish exhibited to Mrs. Adams and her daughter the supposed gift. A few days later, Mrs. Adams complained of a headache and asked Cornish for some of the Bromo Seltzer which he had received. He opened the bottle, poured a teaspoonful of the contents into a glass with some water and Mrs. Adams drank the contents, instantly dropping dead. It later developed that the bottle contained cyanide of mercury, a rare and powerful poison.

Upon the trial of Molineux for this murder, the state was permitted to show that the defendant had been responsible for the killing of one Barnet the month previous to the death of Mrs. Adams, and the admission of this evidence was one of the questions passed upon by the Court of Appeals. On this question that court divided four to three. four of the judges holding the evidence was not admissible, three holding it was.

The conclusion reached by the majority was that there was no connection shown between the two offenses, and that the mere fact that the two crimes were parallel as to method was not sufficient to make one admissible in the trial of the other. This decision is not out of harmony with the Ohio decisions.

Coming now to a consideration of the decisions in Ohio, it must be kept in mind that these decisions must be read not only with reference to their facts, but to some extent, with relation to the time at which they were rendered. From a reading of these cases it is apparent that the law has made great strides in its departure from old common law disabilities.

The only poison case in Ohio bearing on this question is the case of Farrer v State, 2 Oh St 54, decided in 1853, it being a case of death by arsenical poisoning arising in this county. The defendant, Nancy Farrer, was indicted for the crime of murder in the first degree. The charge was that she poisoned by arsenic one James Wesley Forrest. The defense in that case was insanity. On the trial it was shown that the defendant had poisoned other members of the Forrest family, and those crimes were offered and received in evidence.

In considering the question, the Supreme Court divided three to two, three of the judges holding that the evidence should not have been admitted and two that it was proper. The foundation upon which this decision rests is identical with that in the Molineux case.

Years later the Supreme Court considered the case of Brown v State, 26 Oh St 177, in which the defendant was indicted for unlawfully, willfully and maliciously injuring a horse. The facts disclosed that the defendant was a veterinarian; that he went about the village in which he lived predicting an epidemic of a new horse disease from the eastern part of the country, claiming that he understood and could cure this disease; that he secretly injected some poisonous substances into horses, and that some of the horses died and others became sick, sore and lame. The theory of the state was that these acts were done in furtherance of a plan to profit thereby. He was indicted for injuring a certain mare, the property of Lake & Judson. Up-

260

on the trial the state was permitted to prove all of the facts with reference to the other transactions. The chief question presented to the Supreme Court was the claim of error in the admission of this evidence.

With the Farrer case squarely before it the Supreme Court decided in the latter case that such evidence was admissible and used this language:

"Testimony otherwise competent as tending to prove the offense charged in the indictment, is not rendered incompetent by reason of the fact that it also tends to prove a separate and distinct offense."

To hold that the principle enunciated in this case involving horses does not control the case at bar would be to hold that in Ohio animal life is more sacred than human life.

Our Supreme Court has since elaborated upon and extended the doctrine laid down in the Brown case and in effect has said that the law keeps abreast of changing circumstances and conditions. See: Barnet v State, 104 Oh St 298; Whiteman v State, 119 Oh St 293; Beckman v State, 122 Oh St 443; Russo v State, 126 Oh St 114; Morneich v Ins. Co., 132 Oh St 78.

A careful study of these cases makes the conclusion irresistible that the general tendency in Ohio has been and is to relax the old rules in furtherance of justice, insofar as that may be done without invading substantial rights. This tendency is evidenced by the enactment of §13444-19 GC.

While the general rule unquestionably is, that a distinct crime in no way connected with that upon which ██ the defendant stands indicted cannot be given in evidence against one on trial, this rule is not applicable to a case in which a connection between the offense charged in the indictment and others of a similar nature existed in the mind of the defendant. When such connection exists, evidence of other similar offenses is admissible, not for the purpose of raising a presumption of guilt on the hypothesis that a person who commits one crime will probably commit another, but for the purpose of showing a motive or purpose prompting the commission of the offense laid in the indictment; and being competent for this purpose, it cannot be properly excluded on the ground that it tends to prove the commission of other and distinct offenses.

The court is therefore of the opinion that other acts of this defendant are not incompetent because they may ██ also prove separate and distinct offenses, insofar as they prove or tend to prove motive, intent, identification, absence of mistake or accident on her part, or the defendant's scheme, plan or system in doing the act charged against her, and this is true whether the other acts be contemporaneous with, prior or subsequent to the date set forth in the indictment.

The objection to this evidence is therefore overruled and the court holds such evidence to be competent within the limitations set forth.